My name is Tom Hillier, and with me at Council Table is Laura Mate, and the two of us work in the Federal Public Defender's Office and represent Ahmed Ressam. With the Court's permission, what I would like to do is talk for about five minutes about the 841 issue, reserve the balance of my argument for rebuttal of the sentencing argument that is at the front of the government's appeal. Is that okay? Sure. Thank you very much. At the outset of the 841—or 844 argument, I want to emphasize that we—that Mr. Ressam was convicted of five different explosives-related charges. Of course, count one, the terrorism charge, but he's also convicted of smuggling, importing, possessing, and placing on a ferry explosives. We're only contesting one. The effect of a decision which interprets or holds in our direction in that—in this matter would be to reduce the low end of the guidelines, in this case, to 51—55 years rather than the 65 years that we're all assuming apply currently. The argument is—our argument is that in order to be convicted of 844H2, an individual who carries explosives during the commission of a felony, there must be a nexus between the explosives and the commission of the offense—the underlying offense. Here, the underlying offense, as we know, was linked to count five of the indictment, which was making a false statement to a customs agent. What was the false statement, by the way? Was it his name? What was the false statement? Yes. It's two things, really, his name and also that he has nothing to declare. So he should have been declaring explosives, apparently. Is this a case of first impression in this circuit? And as we noted, it has been decided in the third and the eighth, the eighth applying the third rationale—the rationale of the third. And they found that no relationship was necessary. Over a vigorous dissent of Judge— Never mind. I'm sorry. Go ahead. Okay. Over a—is there a reason? I had a question, but go ahead. Well, please ask, Your Honor. I'm sorry. First of all, let me say that I'm a little stuffed up this morning, so— Your theory assumes that the canon of construction, basically, that related statutes should be construed similarly trumps plain meaning of the statute. Can you tell me in 25 words or less why that's so, in your view? Well, with respect to plain meaning, Your Honor, our argument is that the meaning of the statute, plain or not, depends upon the context. And that's what the Supreme Court held in Bailey. And they went on to say, particularly when interpreting broad or elastic terms, should the court construe language in its context and in light of surrounding terms. So our argument is that even within the plain meaning of the statute, there is necessarily a relationship between the explosives and the underlying felony, which is precisely what the Supreme Court held just last year in the Arthur Anderson case, where they read in— Well, that's different. I mean, that involved a mens rea requirement, and that's not an issue here. So, I mean, if you — let's — let me — maybe I can make my question clearer by saying, assume that the statute doesn't plainly, on its face, admit of the interpretation that then Judge Kennedy gave it or that the dissent in Rosenberg gives it. You're still — then you're in a — you've got a collision between plain meaning and we should construe first cousins or siblings statutes similarly. Well, the plain meaning in this case includes the idea that if you read it, that anyone who's carrying an explosive and is committing another offense, that even the lawful possession of those explosives in relation to a coincidental offense can result in their being found guilty and punished to the tune of 10 years consecutive to that. So the plain meaning gives rise to a vagueness argument where this statute might be applied against people who are actually innocent. So is the question only that — or is the — is the competing canon only that similar awards in related statutes should be considered the same, but is there also a time sequence issue here? Wasn't — and I may be wrong about this, but I think that the amendment to this statute, which took out unlawfully, was after the decision in Stewart. That's correct. So therefore, if the Congress was reading what I think was the only case on the subject at the time, they would have thought no reason to put this language in, the in-relation-to language, because we already know that it's there without putting it in. So it's not simply a canon. It's also historical. That's right. Prior to the 1988 amendment, which eliminated the word unlawfully, Stewart had been in this relationship. And at that time, in 1988, when Congress did take out unlawfully, they said they were doing this in order to bring 844 into conformity with 924C, which already had this relationship requirement. I have a somewhat different question. I beg your pardon? I have a somewhat different question. Here, there is a relationship, in fact, a relationship. Even if you read in-related-to, answer it, but it runs in the other direction. Right. That is, he was giving a false statement in order to facilitate the carrying of the explosives rather than the other way around. That's right. But why wouldn't that be enough? Well, Smith precludes that. Smith decided that the in-relation means that the gun were But in-relation isn't there. So while we're making things up, why do we have to make it up according to a certain term that isn't even there? Smith held that relationship does mean in furtherance off. And Stewart said, read in a relationship in this statute, or in 924C, before those words were there. So if you put those two together, what you're talking about is the relationship must be, the explosives must further the underlying crime, not the other way. It is a one-way street. And for sure, the false statement furthered the explosives. And Mr. Rassam's guideline calculations took that into account. He was, in effect, punished for that in the sense that the guideline calculations for the false statement went up by 12 levels because they furthered the explosives. So it's not like there's no consideration of that notion. We're treading on your time. Thank you very much. All right. Mr. McKay. Good morning, and may it please the Court. I am John McKay, the United States Attorney representing the government. I would like to reserve five minutes from my time for rebuttal, and we'll keep an eye on the clock. And I thank the Court for that. The government requests that the 22-year sentence imposed by the district court be vacated as unreasonable and remanded to the district court. I want to address the legal question that was just discussed because it obviously makes a difference with regard to the sentencing as well as anything else. I'd be glad to address that. In the sense that if we were to reverse on that, there would be a reverse on the sentencing, and there wouldn't be a whole lot of sense in our taking a whole lot of time worrying about the sentence. That's correct, Your Honor. I'd be glad to move directly to that. I wanted to make it clear to the Court that the government sees the heart of this appeal as what we allege to be the unreasonableness of the sentence. But let me address the 844 factors directly. First, this is a plain-meaning case. I don't think there's any question about it. See, I'm not so sure I understand how it is in this circuit. While I recognize that Stewart isn't controlling in a literal sense, it comes perilously close to being controlling, and it's certainly persuasive because it interpreted almost identical language, almost identical situation, and said, look, the relational requirement has been in this statute all along. And if that's true for 924C, it would be kind of absurd to say, for us to say, well, but it's not true of this statute. Your Honor, you're correct, obviously, in culling out the circuit, this circuit, because the Third and Fifth Circuit hold that in mind. Mind you, I'm carving out deliberately the Third Circuit's analysis. Whether I agree with it or not seems to me to be fairly beside the point, given Stewart. Well, I think there are important distinctions here in trying to literally apply Stewart in this case. First of all, the difference between the 924 statute at issue in Stewart is that the original language in 924 included the requirement of unlawfulness. So did this one. But this one, Your Honor, at the time of the amendment, the difference here is that the Congress, the legislative branch, made clear the relational requirement in 924, but didn't choose to amend and add the language in 844. I'm sorry, Your Honor. That is totally explained by the time sequence, because by the time they got around to changing this statute, Stewart had already been decided, and Stewart already said that there was no reason to put in relation to, and so they didn't. Well, Your Honor, I think that the one has to assume that Congress acts for a reason, and Congress acted for a reason in 924 to clarify what it felt was the relational requirement. No reason to have clarified. It was already there. And similarly, there's no reason to clarify 844, because by its plain meaning, it requires only that an individual commit a felony while carrying an explosive. It's the same as the language that Judge Kennedy said had always been there. I mean, it had always implied a relational requirement. In 924. And I think that the distinction here is that Congress is free by the structure of its statutes and by the language that it supplies to make the penalties for carrying  a handgun, and that certainly is the structure. And I would point out the structure under 844H, which has two provisions, one of which does have a relational requirement, and the other one which does not, Sections 1 and 2. If you were to read in a relational requirement into Section 2, it makes both sections at least one of the sections superfluous. I wouldn't read it in periods, but the point is that it was done. I mean, it was done, and I don't understand how we're free in this circuit to say it wasn't always so. Well, Your Honor, I think simply it is the plain meaning of the statute itself. It is a different statute. It is a different crime. And the plain meaning of this statute, absent an amendment by the Congress, would not apply. Congress, in addition to appearing to follow Stewart in 1988, said that it was following 924 when it was making the amendment. Congress didn't think there was a distinction. I'm sorry. Congress in 1988 was explicit, I believe, about wanting to conform the two. They thought it was conforming the two. Well, I don't think that's correct, Your Honor, in terms of the penalties that Congress intended to apply for carrying explosives versus carrying a firearm. And it simply says that the penalty for committing a felony while carrying explosives is going to be different than that of the requirement that you carry a firearm in relation to the underlying second felony. That's just simply not present here. And so that is simply the government's position, that the structure of the statute of 844, the fact that we're talking about different offenses, and the legislative branch is free to either have a relational requirement or not have a relational requirement, and they did not choose to do so in this case. And it should not be read in because of Stewart. And that's simply the position of the government. Doesn't this come out with extremely bizarre results if there's no relationship requirement? If, for example, Mr. Ressa was a licensed dynamite practitioner driving across the border in order to go to a construction site or a mine in Washington and use his dynamite, and in the meanwhile, he happened to be carrying something else, that he didn't want the customs to know about, like, you know, diamonds, and they asked him what did he have, and he said nothing, he would have violated the statute as you construe it. That is correct, Your Honor. And it would certainly be the logic of that. Your Honor, it would be – I would suggest that under that extremely unusual scenario, that it would be up to the government to decide whether it would choose to indict under those facts. But why would anybody write a statute like that? Why would anybody write – once you take the unlawfully out, so that you can have a perfectly lawfully carrying of explosives, that's not unusual. People do lawfully carry explosives. In the extreme facts that Your Honor – that Your Honor relates, the government would have the option to seek an indictment under 844H. But that's not the question. The question is why would Congress write a statute like that? Because Congress has simply determined that committing a felony while carrying explosives is a hugely harmful crime which is going to result in a very harsh sentence. And in this case, it's a perfect example of why there should be such a requirement. Mr. Rassam was carrying explosives while committing a felony. To require the government, if that were the only charge to be brought, for example, to require the government to prove that he carried explosives in order to facilitate giving false names and failing to declare would be extremely unfortunate if that were the only charge. Oh, so that leads to the next question, which is, you know, what kind of relationship are you talking about? It doesn't have to run in that direction. But that doesn't eliminate the relationship issue. I don't understand what Your Honor means. Well, what I'm saying is, yes, in this instance, there was a relationship. And the question is, is that so if you take in related to literally, there was a relationship. The question is whether it's the right kind of relationship. And that's a secondary question. But as you point out, he running in the other direction, he was giving a false name in order to facilitate carrying explosives rather than the other way around. That's correct. I mean, I think it's one could presume, even though this was not the fact adduced or included in the jury instructions, that there was a relationship between his giving a false name and not declaring the explosives. That's rather obvious. He would not declare that going in that direction. But to require the government to prove the connection between the explosives and the felony is not something Congress intended to do. And that is clear from the plain meaning of the statute and the structure of the statute. If I may, I'd like to turn to the question of the reasonableness of the sentence in this particular case. And it is, as I said, I believe the heart of the government's appeal that the district court erred in applying a sentence of 22 years for the crimes of Ahmed Rassam. And it's important to recall that Rassam intended the slaughter of innocent people in one of our world's busiest airports, Los Angeles International. Men, women, and children. One year before his admitted comrades inflicted the horrors of 9-11, the destruction of the Twin Towers of New York and the Pentagon, and the poor souls aboard those ill-fated flights. The district court erred in imposing sentence on Rassam because it considered improper matters, failed to relate his crimes to the sentencing guidelines or to Section 3553, and because the record cannot, under any exercise of discretion, support a 22-year sentence for Rassam. Left undisturbed, this sentence would leave Rassam, who is 39 years old today, released in approximately 15 years, leaving him free to rejoin his al Qaeda comrades if he chooses at age 54. This is not a reasonable or just sentence and must be corrected by this Court. of the district judges and our competence to decide, you know, as between 22 years and 35 years, both of which are enormously less than the guidelines would suggest, that why should we agree with the government's version rather than the district court's version of how – of exactly what the sentence – how do we decide that? Well, Your Honor, I think, first of all, the Court should turn to what the district court said and what the record reflects in terms of how a district court reached that position. I think that's implicit in your question to me. And our position is that the district court first – there are a number of errors. First, the district court obviously improperly relied upon pretrial negotiations of sentencing and repeatedly referred to discussions about an offer made pretrial, which were clearly inappropriate. Secondly, the district court just explicitly rejected the government's evaluation of the value of Rassam's cooperation to the government. And he made it clear that it was not the government's own discussion of the importance of the cooperation, but the court's, and that the court would make the decision as to the value of cooperation. And it's the dismissal of the government's view of that cooperation, including most significantly the end of cooperation, his failure to fully cooperate, which the district court seems to have ignored. Third, the district court inexplicably ignored its own admonition to Rassam. This is an unusual situation in which Rassam, who was a time fuse in an interstate away from a major disaster in this country, gave him three months at the initial sentencing hearing. And when Rassam came forward to be sentenced, the district court recognized the importance of his failure to fully cooperate. And as the briefs reflect, his decision to not fully cooperate, as he had promised to do, resulted in the dismissal, the direct probable cause, cause and effect dismissal of two terrorism cases by the government, Abu Doha and Saeed Mohammed, both cases which have since been dismissed. And the district court recognized this significance and gave Rassam three months to reconsider his decision to terminate cooperation. As a practical matter, would we have, if we had only the sentencing issue, would we have any choice but to wait for the two Supreme Court cases that are going to elucidate Booker? Your Honor, I'm sorry, but I can't. Would we have any choice but to wait for the two Supreme Court cases that are going to elucidate Booker, if it had only the sentencing issue before us? As to what we do now, is there anything – I mean, what you're really saying is – or at least part of what you're saying is, in your briefs, he didn't calculate the guidelines or at least he didn't say what he did. He didn't explain himself. Those are the issues that are involved in the Supreme Court cases right now. How much of an explanation does the district court have to give? What does reasonable mean, et cetera? So don't we have – if this is the only issue before us, don't we have to wait? No, I would not think that's true, Your Honor. I think that given this Court's own decision after Booker, number of decisions after Booker, it's clear that the Court – But we vacated ours, too, and we have a nonbank case as well, two of them. Yes, Your Honor. I think – I think given the state of sentencing after Booker, the Court – from the Supreme Court to the Ninth Circuit, you know, the reasonableness standard is there. It is present. And while – and while departures and while the sentencing guidelines continue to be extremely relevant, the Court still has – the current law of this circuit is that the Court would review the sentence for ultimate reasonableness. And that doesn't make much difference as a practical matter, I suppose, whether we sit on it or the district court sits on it. It's going to be sat on, isn't it? Well, you're right, Your Honor.  Somebody's going to have to wait. Your Honor, I would – If you – if you win on the – on count nine, then presumably we'll sit on it. If you lose on count nine, presumably the district court will sit on it. Either way, it's sat upon. Your Honor, far be it from me to urge on this Court what you intend to do with your time on this case, whether to issue an opinion or not. But I would suggest the district court is in great need of guidance from the circuit court in this case. I mean, they're going to get it from the U.S. Supreme Court. We all are going to get it. Maybe. And it addresses my – you know, my conceptual or my, you know, underlying concern, which is that if Booker is serious about restoring district court discretion, that here we have a case of a district judge who has lived with this case for five years, who said that he gave this sentencing more attention than he'd given anything in his 24 years on the bench, that he was morally certain of his result. But he didn't explain himself very well, however. And it is difficult for us to review his reasoning process because he didn't really give it to us. So the question is, you know, what are we doing here post-Booker? This case is, you know, really at the middle of that question. You know, what is our role? What is the district court's role? How serious are we about discretion? Et cetera. Those philosophical matters are going to underlie the Supreme Court's approach now. This is certainly to the Court's discretion as to when you might issue an opinion or when you might not issue an opinion. The government is urging you to consider the clear errors of the district court in this sentencing case under current Ninth Circuit law. And those do include his failure to take adequate account for the failure of cooperation of Versailles. It fails to accord the government's view of that failure of cooperation, including the last two cases. Well, where do you see the cooperation regime fitting in under Mohammed? I think under Mohammed. Under Mohammed, it kind of doesn't exist, does it? In a way, you're right, Your Honor. But I think in fairness, the government must acknowledge the cooperation of Rassam. And we have done so with the information that he has provided. And it did. But beyond that, if, in fact, if, in fact, the departure regime is an anachronism, then we're no man's land, aren't we? I mean, then you're just reviewing to see whether the sentence is reasonable. Well, I would suggest that fairly read, the current Ninth Circuit law would require the Court to take a look at the sentencing guidelines. In both parties, it meant for purposes of this appeal, it would be life to the low range of 65 years. I understand that. And that also fairly, in light of the Court's decision, one should look at the cooperation that was provided and all factors that might apply under 3563A. But that's different. You began by saying that we have that he one of his mistakes was not crediting the government's evaluation of the cooperation. Yes. Why does that matter, Post Booker? It matters because they're the only – their only explanation for such a serious disregard at what seemed of the sentencing guidelines was for Somme's cooperation. Because we're talking about a convicted terrorist. I want to know where you get the idea that the district court has to credit the government's evaluation of the cooperation rather than looking at it himself. Well, I think, again, loosely looking at a – what would have been a downward departure under the sentencing guidelines, under 5K analysis, when it applied, one would accord the government Somme's credence. Right. But that's why, Judge Reiner, the question is important. If Mehabit takes that all out, then the government's evaluation doesn't matter. Or it doesn't, except there's a recommendation. But it's – like any other government recommendation, it doesn't have any separate force of its own, does it? I agree with you. I don't think that's right. I think that it would – I think it is right. And I think that the government's – the government's view is pertinent in this case because the distinction is so clear. Yes, for Somme cooperated. Yes, there was valuable information for the government. But he was required to cooperate fully and clearly to continue his cooperation and provide testimony in the two terrorism cases that were pending. He terminated that. The district court gave him an opportunity to correct it. He did not. And the district court so clearly erred in imposing a sentence of 22 years that the court should not allow that to stand. And a mere remand to correct the procedural errors would not be significant here, other than perhaps to gain some time. Pardon me, Your Honor. The defendant was asking for 15 years, right? Ten to 15 years. 12.5, I believe, Your Honor. All right. So we gave him double that. So he could well have taken into account. We don't know. We didn't explain it to him. Your Honor, I think – I think under the law of the circuit, the court was required to begin with the sentencing guidelines, which start at life and at the low end are 65, to accommodate under 3553 the remaining factors. And the government concedes one of those is cooperation. Even though that's not set forth in 3553. And so the government's recommendation of 35 years could be deemed to be quite generous under that calculation. And I think – I think that it did fairly hold Rassam – give him credit for his cooperation. But he in no way, shape, or form – neither he nor any other potential terrorist who is in the custody of the United States should believe that by giving partial cooperation they would achieve such a serious, serious departure from the sentencing guidelines. It's not even a close call. And we would simply urge the Court to remand – to vacate the sentence, remand it, and make it clear that the sentence imposed was unreasonable. Thank you. We thank you, Mr. McKay. Mr. Tillyer. Thank you, Mr. Court. The – I think to start just with some of the questions that you have asked, the relevance of the guidelines, because it allows the Court, then, to make an assessment of what it thinks ought to be the correct sentence unfettered by the guidelines. If the cooperation departure guideline lives to any extent, the district judge obviously didn't touch any of the bases in that guideline. I mean, the bottom line here is he picked a number out of the hat, even to the point of then turning to the government and saying, oh, you go figure out how to allot this. I mean, he just picked a number. And we can't tell from anything he said why he picked that number as contrasted with any other number. And, sure, I believe it's an unreasonableness review and that there's a lot of discretion reposed in a district judge. It should be. You're exactly correct, Your Honor. But you've got to have something to review, and there just isn't anything to review here. That's the trouble. Your – and your case law mix and others say exactly that. Yes. That on appellate review, we would like to have a record that indicates why it is you got here. And this record is somewhat terse in that respect. But what the judge did say, and I think it's important to pay attention to the words he did use, he said, I'm imposing this sentence because of the seriousness of the charge. So he's addressing that aspect or those aspects of 3553 that require retribution and protect society. He says, I'm imposing this sentence to send out a message to everybody that if you do this in this country, it will be prepared. A funny message. Which is deterrence, right? Well, yeah, but I mean, you're not going to – what's the message? But why did he pick this particular number? Yes. Well, he was given – the numbers that he was given range from 12 and a half years to 35 years, which I think highlights, again, that the tether of the guidelines is not hugely relevant in this case. Even the government is way away from the guidelines. So he's given a range of numbers that the parties argue are relevant. His sentence is right in the heartland of those numbers. It's a 22-year sentence, which takes into account both those – the notions of deterrence and protection of society, but also cooperation. And Mr. McKay rhetorically argues about what occurred on the border in December of 1999. But recall, 20 months later, this same man was on the stand in New York City testifying against Mokhtar Wari. So something happened here. It's not the same person who came over that border, which the Court also took into account. Yes, but he stopped cooperating. I mean, that's the whole thing. That got him down from 65 to 35. Now, the question is, how do you get from 35 or 25 or 12-and-a-half to 22? Well, that we don't know. And certainly one of the options you have is to ask the Court to give a fuller exposition of what it is that drove the particular sentence that he gave. What is your position as to the two factors that we were told by Mr. McKay are not proper, one being the author and the 35-year offer pretrial, and the other being the judge making his own decision as to the degree of cooperation or the importance of the cooperation? He claims that those two factors were implicit in the sentence. The government's position. Well, with respect to plea offers, the government offers no authority whatsoever that that can't be taken into account, because it is on a somewhat regular basis. Parties go before the Court routinely and say, we wanted five years. The government was asking for eight. We came to this agreement, and that's why we're making these recommendations to Your Honor. Which 353A factor does that peg to? I beg your pardon? Which 3553A factor does that – is that founded in? Does plea negotiation relate to? Yes. Well, it relates to the government's assessment of what is – Where is that in 3553A? One of the – the general 3553A factor of the circumstances of the offense, the seriousness of the offense. And, you know, recommendations that are made by parties necessarily take into account their view of what the seriousness of the offense is. So that happens continuously. I think what the government has done is tended to conflate an offer with a judge's involvement in plea bargaining, and that didn't happen in this case. With respect to the government's opinion as to what the cooperation was worth, at the sentencing hearings, the court invited or listened to argument from both Robert McKay, the U.S. attorney, Robin Baker, who is the U.S. attorney in charge of this prosecution, assistant United States attorney from the Southern District of New York. He invited Andrew Hamilton, who was one of the trial lawyers for the government, to come forward and talk. And he invited Fred Humphreys, who was a special agent in charge, to come up and talk. So he took into account the government's view. The government argued long and hard what it felt the appropriate sentence should be. The judge disagreed with that, apparently. And this court has held, and you, though, and Hannah, that the government doesn't have control over the extent of the departure once the government makes a motion, and that Hannah said that it's within the court's discretion, absent an abuse of that discretion, to make that particular call. So I think the disagreement here is with what the court did, not that the court didn't hear them. With respect to some of the words that the judge used when he was basically asking Mr. Rassam to reconsider, he was trying to convince him, look, you should reconsider your decision about testifying against Abu Doha here, because I'm the person who controls this sentence, not the government. It wasn't a situation where he was minimizing what the government's point of view is, but he was trying to encourage Mr. Rassam to move forward with his cooperation. I think, Judge, first of all, you were talking, and Judge Reimer, about what's this whole motion is also clouded by what's happening out there. Not only did Judge Kunawer not have the benefit of Cantrell and Mix and Muhammad when he sentenced Mr. Rassam, which suggests that we should have a guideline calculation on the record, and he should be more effusive in making the findings that he ought. But I think the record here, we can see exactly what he wanted and uphold this sentence for reasonableness, but perhaps you prefer not. If you did, as you suggested, find in our favor on 844, it could be remanded, and the court could sit on it, because Claiborne, issue number 2 in the Claiborne decision, which is pending before the Supreme Court, does speak to the issue of the extent of the departure and its relationship with the guidelines. So that's an option also. But it seems to us that given the need to explain. Is there also a question in one of the Supreme Court cases, I believe, about the need for explanation or how much of an explanation? That's correct. Actually, in the other case, yes, in the other decision. Rita or Rita? Yes, Rita. The court in that decision didn't talk, although there was a multitude of mitigating factors that could have taken the case outside of the guideline range. The court didn't talk about that at all. And so that is an issue that's up before the Supreme Court also. But looking at the record in this case, terse as it was, Judge Kuhnauer hit three nails right on the head. He talked about, you know, the need for public safety and incapacitation, the need for deterrence, and the importance of a message in this particular case, and the importance of Mr. Ressam's cooperation, given all the history that this case encapsulates. He's giving us, us, an appellate court which is supposed to be reviewing for reasonableness with nothing coherent to review. Your Honor, I'm not here to review. And with nothing coherent to review in the sense that we do not know his reasoning process for reaching the number he reached.  Well, I don't think it's a math situation. The numbers, again, range from 12.5 to 35. And I think typically what you want that calculus for is that typically you are more tethered to a guideline range in a sentencing situation. 65 to life in this case makes no sense, given the recommendation that was made by the government and given the 5K. I think we see that it's out there, so we're not going down, well, I'm going to give you 10 years for the intelligence, 5 years for the testimony against Warry, and that sort of thing. So basically, as an appellate court at that juncture, we have two choices. One is to ask for a detailed explanation and review as sort of as logic. And the other is to say they really meant that in Booker. We're back where we were before. And that may be, but that's at least some of what we may get a sense of in the cases now, because if they really meant that we're back to a pre-guideline situation in terms of district court discretion, well, then reasonableness means something even more extreme than this, because here we have a circumstance where at least we know generally what he was thinking. He was thinking generally that there was cooperation that mitigated the crime, and maybe that's enough. Right. Well, certainly the Supreme Court's going to shed some light on that, because both Rita and Claiborne deal with the notion of presumption of reasonableness, and that that may or may not attach to the guidelines. If so, how much and how is it overcome and those sorts of questions, same questions that you asked in the Cardi Zavala arguments. So we are still in a cloudy environment in terms of how some of these issues are going to play out. And certainly at the outset of this case, it would be difficult for me to say that since this might be coming, we asked for a limited remand to allow the court to give more specific reasons for the decision that he came to, which speaks to a shared concern with the state of the record. You may get it. So here's a final question. If you were to reverse on the legal question as to the explosives, right, is there any reason for us to sit on the case as opposed to sending it back to the district court and as Judge Roberts is letting him, somebody's going to sit on the case? I think it should go right back to the court and let the court then have the benefit of the jurisprudence that's going to be coming out of the Ninth Circuit and the Supreme Court in the next eight or nine months. And then maybe we can end this case. Are there no questions? I don't think so. Thank you, Mr. Scalia. Thank you very much. Okay. Your Honor, I believe I have 44 seconds, if I may. Just take them quickly. I know we have a number of great law clerks here, and someone's going to get the answer to this, but I think that the issue under 844 is that there never was the language of unlawfully in 844. Well, there was. That's the whole thing. You're wrong about that. Well, I may be wrong about that, Your Honor, but I'm asking that that be the issue that's clarified, because I think that's what Stewart pinned it to was the presence of 844 and the presence of unlawful. Right out of the statute. In 924, but not in 844. That's why I was asking these questions about 1988. In 1988, unlawfully was taken out. We have a disagreement, Your Honor, and I guess there wasn't a clear answer to that. I'm reading from the public law of 1970, which carries an explosive unlawfully during the commission of any felony. I mean, this is right out of the statute. I may have missed it just that clearly, Your Honor, and let me just go back finally to the under the reasonableness argument. I was not – I didn't have the opportunity to conclude by indicating that I think that the district court obviously pinned his decisions to matters that were improper. And the final point is simply that he chose the sentencing hearing to send a message by his own terms to the world about enemy combatants, about matters that were not before the district court in the sentencing of Rassong. And that we do know from the record. We do know that that was incorrect, and the court should not miss this opportunity in a terrorism case to clarify that for the district court. Thank you.
judges: Alarcon, Rymer, Berzon